The next matter is number 1-5-2-0-0-5, 1-5-2-0-0-6, 1-5-2-0-0-7, in re Nexium Antitrust litigation. Good morning, may it please the Court. Tom Sobel for the three groups of Nexium purchasers. If I may, Your Honor, I reserve five minutes for rebuttal. Yes, you may have it. Thank you very much, Your Honor. And as you've indicated, I'll cut right to the chase. The first issue I'd like to address is the issue of summary judgment. Whether the district court erred... What difference does it make? Excuse me? What difference does it make? Normally, a jury verdict will wipe out any summary judgment error. Further, this isn't the classic case of the summary judgment ruling standing. The judge, halfway through the case, said, whoops, I think I made a mistake. And so he switched grounds on his summary judgment and, as best I can tell, admitted whatever evidence you had not already put in, except for evidence that he excluded on Daubert grounds. Is that correct? No, Your Honor. Okay. So what I hear are three different questions in there, so I want to make sure I address each of them. The first question is, to what extent was Judge Young's fundamental misconception a realization of everything that he had ruled upon in summary judgment or not? Because our position is that there are substantial aspects of what he did in summary judgment that continued. That's one question. The second question, then, is, even as to the issue that he had a change of position on... I'm sorry. Your first argument, are you really arguing that, regardless of the jury verdict, we have a jurisdiction now to review each of the other summary judgment rulings? Yes. Okay. Yes. Because this is the issue. I'll turn to that issue first. So what Judge Young determined when he came to his fundamental misconception was relatively narrow. What it is that he realized was that a transaction between AstraZeneca and Ranbaxy, a payoff of Ranbaxy, affects not only Ranbaxy, but all other generic wannabes, if you will, behind Ranbaxy. Lacteba. That's, excuse me? Lacteba. Yes, that's right, Lacteba. But that's the only appreciation that he had. So he still stuck to and made clear, when he came to his fundamental realization, he made clear at that ruling that he was sticking by his other summary judgment rulings. Therefore, he was sticking by his notion that he was going to prevent us from producing any evidence of the prospects of Teva winning the patent litigation. He was going to exclude anything at all about Ranbaxy prevailing, excuse me, launching at risk. He was going to preclude any possibility of Ranbaxy having its first to file forfeited. I believe, didn't he make two rulings, one at summary judgment and one later saying that there simply was not enough evidence to pursue the theory that the patents were invalid, that there never was in the case? I'm sorry, I'll stop interrupting. No, no, no. So I think what Your Honor is asking is the question of at risk. So he precluded, without a doubt, our being able to prove at trial Ranbaxy by itself launching at risk. He didn't say anything in the summary judgment ruling without our proving that Teva with Ranbaxy might launch at risk. Though sub silentio he had made that ruling because he was limiting us to only one other theory that didn't include that. When we went to trial, we did get some evidence in about Teva launching at risk. Yes, under the conspiracy claim. Right. We got some evidence in about that. Did you make objections at the time that you were not being allowed to put in other evidence? Of at risk, of Teva? Yes. No, but that's not our claim of error. Our claim of error is not that we didn't get some more evidence in about Teva launching at risk. It is instead that when we came down to the jury charge, the judge all of a sudden changed his point of view and said, wait a second, I am not going to permit any evidence about, I'm going to charge out of the case Teva at risk. But you did not object to the form of the jury questions on questions one through three and four, other than the notion that by using the names as exemplars, you said the district court committed error because it's an objective test. No, that's actually not accurate. In the pre-charge conference, the charge the previous day, on this very precise issue about the judge telling me that he was going to exclude from the charge, charge out of the case, Teva at risk, I told him that that was contrary to Act Davis, wrong as a matter of law, and he also indicated something to the effect of, I don't want to be misleading anything, something to the effect of, I got it. Okay. But you failed, did you not fail to remake that objection after he in fact told you he was going to do it and gave you the opportunity to object? You didn't object when? It was not done after the instructions were given, that's correct. And you had been warned explicitly by Judge Young that you had to make that post-instruction objection. Well, I don't know about that specific issue, but yes, that's right. And that is the rule. I understand that. Let me go back because it's important to understand that whether or not you are allowed to go to the jury on Teva at risk or anything else, you have to understand the fundamental mistakes they made in summary judgment which cramped the trial. Because all of the different kinds of evidence that he said we were not allowed to put in evidence, about forfeiture and then Baxter's ability to get to market, about launching at risk, about the prospects of people being able to get to trial, all of that was excluded from the trial. That was summary judgment. We were entitled to rely upon that. And this court's held in Alberti case that when a court midway through trial, or in this situation actually three-quarters of the way through trial, changes its mind, it's got to give parties an opportunity to be able to put in evidence. And after the time that Judge Jones made his decision about excluding, about his fundamental misconception and letting us do something else, he didn't let us put in anything from our comments at all. So when the judge reached that point where he had changed his mind, he said he wasn't going to allow you to put in any more evidence, but he invited you instead to join in the mistrial motion. What I can't find in the record is whether at that point the judge was saying that in the event of a mistrial, you would, because of his epiphany, have been allowed to put in the evidence for a new trial, or whether he was saying, as I took from your memo, but I'm not sure at this point, or if he was saying that his pretrial summary judgment rulings would still apply, and in the event there was a retrial, you still would not be able to put in the evidence. Yes. So what Judge Young indicated unequivocally was that if there was to be a new trial, all of his summary judgment rulings would still apply. He says that on the page right before he is talking about a new trial. So what we knew was that we were three-quarters of the way through a trial. We've made all these investments of time and resources and the jury. And the judge has told us that, well, on this specific issue about how the Rambaxi deal might affect some other things, I now get it. What we knew is that all of the other fundamental decisions that he made at summary judgment were still going to be going forward at some new trial. And that, therefore, from our point of view, we weren't going to be able to do that which this court has repeatedly said in antitrust cases you should be able to do. What was your author of proof as to the other theories? Because in the end, after the trial, he reaffirms that he doesn't think you have any evidence to support those other theories. I think the court was absolutely incorrect. So first, the author of proof that he gave to the court after he refused to let our economist testify was that the author of proof was, wait a second, our economist is going to testify that the payoff was $600 million, that it cost AstraZeneca about $637 million. Okay, and that was after the Daubert challenge had been made. So there's two different aspects of the economist's testimony. One broad section has nothing to do with the Daubert ruling by Judge Young whatsoever. So when Judge Young fails to, when he appreciated even, he put this on the record at the time he was struggling with what to do with Dr. McGuire. He said, I understand that Dr. McGuire will be in a position to testify about the size of the payments, about how those payments can influence these kind of deals, about how it is that these parties might have been seeing the deal differently if they weren't sharing all this money. None of that was subject to the Daubert challenge at all. The only piece about the Daubert challenge which he then turned to was he said, wait a second, this date that Dr. McGuire wants to testify about what the parties would have reached otherwise, I don't see that that has fit as between the deal between Ramaxi and Teva. I thought the judge also said a lot of that evidence came in on your conspiracy case. No, it did not. It did not. There were two trips to the stand by Dr. McGuire. The first time all he was testifying about was Teva and not about AstraZeneca and Ramaxi. The second time that he came on the stand, he was not permitted to testify.